UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| KEVIN D. ROY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:09 CV 239 JM |
| | ) | |
| ROY DOMINGUEZ, Sheriff, *et al.*, | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Kevin Roy, a prisoner confined at the Westville Correctional Facility, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging the violation of his federally protected rights while he was confined at the Lake County Jail. On August 31, 2009, he filed an amended complaint. The defendants are Lake County Sheriff Roy Dominguez, Jail Warden Benny Freeman, and several John Doe defendants.

Pursuant to 28 U.S.C. § 1915A(a), the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. FED. R. CIV. P. 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Courts apply the same standard under § 1915A as when addressing a motion under RULE 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). "Dismissal is appropriate only when it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Id.*

A document filed pro se is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> * * *
>
> [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (quotation marks and citations omitted).

Roy brings this action under 42 U.S.C. § 1983, which provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. *Burrell v. City of Matoon*, 378 F.3d 642 (7th Cir. 2004). To state a claim under § 1983, a plaintiff must allege violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42 (1988).

Roy alleges that the defendants prevented him from practicing his religion while he was at the Lake County Jail. He specifically asserts that he is a Jehovah's Witness, that jail officials would not allow Jehovah's Witnesses to conduct group worship in the jail chapel even though other denominations were allowed to do so, and that jail officials made it difficult for his minister to give him spiritual guidance and eventually "refus[ed] to let him come in the jail." (Amended Complaint at 3). Roy alleges that these acts violated his rights under the First Amendment, the Fourteenth Amendment's equal protection clause, and the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb.

A. FIRST AMENDMENT

Under the First Amendment, prisoners "retain the right to practice their religion to the extent that such practice is compatible with the legitimate penological demands of the state." *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). A prison or jail regulation or policy that might otherwise unconstitutionally impinge on an inmate's First Amendment rights will survive a challenge if it is reasonably related to legitimate

penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) and *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987). "[T]he prison is entitled to curtail these rights to the extent necessary to protect security." *Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (1988).

> Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Whitley v. Albers*, 475 U.S. 312, 321-322 (1986) (citations, ellipsis, and quotation marks omitted).

Giving Roy the benefit of the inferences to which he is entitled, his First Amendment claim that the defendants deprived him of his right to practice his religion is sufficient to survive dismissal at the pleadings stage

### B. FOURTEENTH AMENDMENT

The Fourteenth Amendment's equal protection clause prohibits discrimination and requires the evenhanded treatment of all religions.

> In providing [inmates the] opportunity [to practice their religion], the efforts of prison administrators, when assessed in their totality, must be evenhanded. Prisons cannot discriminate against a particular religion. The rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more traditional denominations. Of course, economic and, at times, security constraints may require that the needs of inmates adhering to one faith be accommodated differently from those adhering to another. Nevertheless, the treatment of all inmates must be qualitatively comparable.

*Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991) (citations omitted). Giving Roy the benefit of the inferences to which he is entitled at the pleadings stage, the court

4

cannot say that he can prove no set of set of facts consistent with his Fourteenth Amendment equal protection claim.

## C. RFRA and RLUIPA

Roy asserts that the defendants violated rights protected by the RFRA. That statute, however, has been declared unconstitutional as applied to state and local governmental entities and their employees. *See City of Bourne v. Flores*, 521 U.S. 507 (1997). Nevertheless, the Congress subsequently enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA), which provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Therefore, even though the plaintiff's RFRA claims must be dismissed, the court will analyze his claims under RLUIPA.

RLUIPA does not define substantial burden, but in a case interpreting the land use provisions of RLUIPA, the Seventh Circuit has stated:

> [A] substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable.

*Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003). The statute defines religious exercise to "include any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7).

5

Nevertheless, a substantial burden may be justified if it is the least restrictive means of furthering a compelling governmental interest.

> We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests.
>
> * * *
>
> Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. They anticipated that courts would apply the Act's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.

*Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005).

Giving Roy the benefit of the inferences to which he is entitled at the pleadings stage, the court cannot say that he can prove no set of set of facts consistent with his RLUIPA claim.

## D. INJUNCTIVE RELIEF

The amended complaint seeks damages and injunctive relief. Roy was housed at the Lake County Jail when the events he complains of occurred, but he was already committed to the Indiana Department of Correction and confined at the Westville Correctional Facility when he filed his complaint and amended complaint. If a prisoner is released or transferred to another prison, "his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'" *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996), quoting *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988). Roy is no longer confined at the Lake County

6

Jail, and his transfer to the Westville Correctional Facility renders his requests for injunctive relief against Lake County Jail officials moot. *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974); *Martin v. Davies*, 917 F.2d 336, 339 (7th Cir. 1990), *cert. denied* 501 U.S. 1208 (1991).

It is possible that Roy could return to the jail if other criminal charges are filed against him in Lake County, but the mere possibility of re-transfer is insufficient. The standard to be applied here is whether he is "likely to be retransferred." There is no reasonable basis for the court to conclude that Roy is "likely to be retransferred" to the Lake County Jail.

### E. DAMAGES

Roy "is seeking $500,000 Compensatory Damages per defendant for almost 9 months of mental and emotional distress, along with $1,000,000 Punitive Damages per defendant for almost 9 months of cruel and unusual punishment. I'm suing these defendants, severally, individually and in their official capacity." (Amended Complaint at 4). The plaintiff inaccurately describes his damage claim as one for cruel and unusual punishment, which is an Eighth Amendment concept dealing with conditions of confinement — his claims against the defendants arise from the First and Fourteenth Amendments.

Roy seeks damages from the defendants for "mental and emotional distress." But because he alleges no actual physical injury from the defendants' actions, he may not seek damages for mental or emotional injury. "No Federal civil action may be brought

7

by a prisoner confined in a jail, prison, or other correctional facility for emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). This section is entitled a "limitation on recovery," and is a clear effort to limit prisoners' ability to recover for mental and emotional distress where there has been no physical injury, though they may still seek other forms of damages. Section 1997e(e), as the plain language of the statute suggests, "limits recovery 'for mental and emotional injury', but leaves unaffected claims for nominal and punitive damages, which seek to remedy a different type of injury." *Calhoun v. Detella*, 319 F.3d 936, 941 (7th Cir. 2003). (citations omitted). Accordingly, Roy may not recover damages for "mental and emotional distress," and is limited to other forms of damages for any constitutional violation he may be able to prove.

In regard to RLUIPA, the Seventh Circuit has concluded that RLUIPA could not subject state or local officials to suit in their individual capacities. *Nelson v. Miller*, 570 F.3d 868 (7th Cir 2009). Roy may sue the defendants for damages in their official capacities but, pursuant to 42 U.S.C. § 1997e(e), prisoners are limited to nominal damages in RLUIPA claims, as well as Constitutional claims, absent actual physical harm. *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007). The Seventh Circuit cited *Smith v. Allen* with approval in *Roger v. Bryan*, 523 F.3 789, 804 (7th Cir. 2008).

F. JOHN DOE DEFENDANTS

Roy names Sheriff Dominguez, Warden Freeman, and several John Doe jail officials as defendants. In regard to the Doe defendants, a prisoner needs to furnish the

court with sufficient information to identify the defendant, "'John Doe No. 23' won't do." *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990). Moreover:

> [I]t is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff.

*Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (citations omitted).

Accordingly, the court will dismiss the Doe defendants. If Roy is able to identify any of these persons through discovery, he may file a motion seeking to amend his complaint to add them as defendants. The court advises the plaintiff that if he seeks to amend his complaint to name additional defendants, he must provide the materials necessary for the Marshals Service to serve them with process.

For the foregoing reasons, the court:

(1) **GRANTS** the plaintiff leave to proceed against defendants Rogelio Dominguez and Benny Freeman in their official and individual capacities for damages on his First and Fourteenth Amendment claims, and **GRANTS** him leave to proceed against the defendants in their official capacities for damages on his Religious Land Use and Institutionalized Persons Act claim;

(2) **DISMISSES**, pursuant to 28 U.S.C. § 1915A(b)(1), the John Doe defendants, the plaintiff's claims for injunctive relief, his claims for damages for mental and emotional suffering, and his claims for damages against the defendants in their individual capacities on his Religious Land Use and Institutionalized Persons Act claim;

(3) Pursuant to 42 U.S.C. § 1997e(g)(2), **ORDERS** that defendants Dominguez and Freeman respond to the complaint as provided for in the Federal Rules of Civil Procedure; and

(4) **DIRECTS** the marshals service to effect service of process on defendants Dominguez and Freeman on the plaintiff's behalf, and **DIRECTS** the clerk's office to ensure that a copy of this order is served on them along with the summons and amended complaint.

**SO ORDERED.**

DATE: September 21, 2009

s/James T. Moody  
JUDGE JAMES T. MOODY  
UNITED STATES DISTRICT COURT