UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| KEVIN D. ROY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:09 CV 239 JM |
| | ) | |
| ROY DOMINGUEZ, Sheriff, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Kevin Roy submitted a complaint under 42 U.S.C. § 1983, alleging that Lake County Jail officials violated his right to practice his religion while he was confined at the jail as a pretrial detainee. The court screened the complaint pursuant to 28 U.S.C. § 1915A and allowed Roy "leave to proceed against defendants Rogelio Dominguez and Benny Freeman in their official and individual capacities for damages on his First and Fourteenth Amendment claims, and . . . against the defendants in their official capacities for damages on his Religious Land Use and Institutionalized Persons Act claim." (DE# 7 at 9). The defendants have filed a motion for summary judgment pursuant to FED. R. CIV. P. 56, asserting that Roy did not exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a); the plaintiff has responded.

The standard for reviewing a summary judgment motion is the same regardless of whether a party is represented by counsel. *Outlaw v. Newkirk*, 259 F.3d 833, 836-837 (7th Cir. 2001).

> [T]he plain language of [FED. R. CIV. P.] 56(c) mandates the entry of
> summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986).

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations, quotation marks, ellipsis omitted).

Pursuant to 42 U.S.C. § 1997e(a), prisoners must utilize any available prison grievance procedure before they may file a § 1983 claim regarding conditions of confinement. *Booth v. Churner*, 532 U.S. 731 (2001); *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 537 (7th Cir. 1999). "Exhaustion of administrative remedies, as required by § 1997e, is a condition precedent to suit. § 1997e applies to 'all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong.'" *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002), quoting *Porter v. Nussle*, 534 U.S. 516, 122 (2002). Although not depriving the courts of subject-matter jurisdiction, the comprehensive administrative exhaustion requirement requires dismissal of any case in which an available administrative remedy has not been exhausted. *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000).

But "[p]rison officials may not take unfair advantage of the exhaustion requirement," *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006), quoting *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), and prison or jail officials may render a grievance remedy "unavailable" by the way they handle a prisoner's grievance. "Because the PLRA does not say when a process is available, the court must apply the ordinary meaning of the term." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). "When the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited. On the other hand, when prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality." *Id.* "If administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust . . . .." *Id.*

"The court must not proceed to render a substantive decision until it has first considered § 1997e(a). The statute gives prisons and their officials a valuable entitlement — the right *not* to face a decision on the merits — which the courts must respect if a defendant chooses to invoke it." *Perez v. Wisconsin Dept. of Corrections*, 182

F.3d at 536 (emphasis in original). Where exhaustion has been raised as a defense, issues relating to exhaustion are to be resolved by the court before proceeding to the merits. *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008), *cert denied* – U.S. – , 129 S.Ct. 1620, 173 L.Ed.2d 995 (2009). Because the defendants are the moving parties, and because they bear the burden of proving the affirmative defense of lack of exhaustion, the court must "extract all reasonable inferences from the evidence in the light most favorable to" Roy as the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In support of their summary judgment motion, the defendants submit the affidavit of Assistant Jail Warden Christopher McQuillin, a copy of the Lake County Jail Inmate Handbook, and copies of ten grievances Roy filed at the jail. The defendants' submissions establish that the Lake County Jail had a grievance procedure in effect while Roy was housed there, and that the claims he presents in his complaint were grievable.[*] Assistant Warden McQuillin states in his affidavit that according to the jail's records Roy filed ten grievances dealing with religious matters while he was at the Lake County Jail, but that:

> During his incarceration at the Lake County Jail during 2007 and 2008, KEVIN D. ROY never filed a written appeal of any of the grievances in Defendants' Exhibit #3, concerning his complaints regarding Jehovah Witness services or any other matter contained therein, with either the Warden of the LC Jail or the Sheriff of Lake County as required by the

---

[*] In one grievance a jail official told Roy that the subject he raised "was not a grievable issue" (DE# 23-3 at 5 ). But when he later presented the same issue in another grievance, a jail official responded to it. (DE# 23-3 at 10).

> grievance provided in Section XVI(B) of the *Lake County Jail Inmate Handbook*.

(Docket #22-1, McQuillin affidavit, ¶ 10).

The defendants submit the ten grievances Roy filed dealing in whole or in part with the religious claims he presents in his complaint. (DE# 22-3 at 1-10). Review of these grievances establishes that jail officials responded to grievance #5, which requested a quieter room to hold religious services, by advising him that "[t]his is not a grievable issue." (DE# 23-3 at 5). Roy later filed another grievance (grievance #10) on the same subject, noting that his earlier grievance had been rejected as dealing with a "nongrievable" topic; a jail official responded "[w]e have talked before + I have talked to your minister also + instructed both of you that he needs to set up a meeting with the Warden concerning this situation. There is really nothing else I can do." (DE# 23-3 at 10). A jail official also responded to grievance #7, which sought to obtain the same treatment for Jehovah's Witnesses as was afforded to other religious groups, and also complained about medical treatment, by stating "I talked to Mr. Roy about Mr. Chase told him to have Mr. Chase set up a meeting with the Warden. As of 3-4-08 Mr. Roy hasn't been to Medical." (DE# 22-3 at 7). The space for response by jail officials on the other seven grievances is blank, which the court construes as meaning jail officials never responded to those grievances. The plaintiff asserts in his memorandum that most of his grievances "went unanswered" or that he "received no response." (DE# 25 at 2-6).

The defendants argue that a Roy "failed to exhaust his available administrative remedies by not appealing any grievances he filed . . . to the Warden, and Sheriff, as provided under the grievance procedure." (DE# 22 at 10). But the Lake County Jail grievance policy does not support a claim that a prisoner must always appeal a grievance through all levels in order to exhaust his administrative remedies. As Roy points out in his response to the defendants' summary judgment motion, the jail policy only requires an appeal if the inmate is dissatisfied with the initial response he received. (DE# 25 at 8-9). The inmate handbook provides that after receiving the initial response to a grievance:

> If you are still dissatisfied, you may appeal within 72 hours in writing on the proper appeal form to the Warden. The Warden or Assistant Warden will give his decision within five (5) working days. If still dissatisfied, you may appeal, in writing on the appeal form and direct it to the Sheriff. His decision will be final.

DE# 22-2 at 16-17.

Here, jail officials did not say, in response to grievances seven and ten, that they would not give Roy any relief — which would require an appeal to exhaust administrative remedies. Rather, they responded to these grievances by telling Roy to set up a meeting with the warden to discuss the subject. This is not the sort of response that would always require an appeal.

Because the defendants bear the burden of proving the affirmative defense of lack of exhaustion, the court must "extract all reasonable inferences from the evidence in the light most favorable to" Roy as the nonmoving party." *Matsushita Elec. Indus. Co.,*

6

*Ltd. v. Zenith Radio Corp.*, 475 U.S. at 586. In the circumstances presented here, if Roy appealed grievances seven and ten to the warden he would be appealing being told to meet with the warden. It would have made considerably more sense for Roy to simply attempt to set up a meeting with the warden, as he had been told in the grievance responses.

In any event, Roy was certainly under no obligation to appeal in the seven grievances to which jail officials did not respond in any fashion. Administrative remedies are unavailable if prison officials do not respond to grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (Court accepted inmate's argument "that he was not required to exhaust administrative remedies because the prison officials' failure to respond to many of his grievances and requests rendered those remedies unavailable."). "Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d at 809. In *Dole*, the court noted that in each case where a prisoner had been found not to have exhausted, "unlike this one, the *prisoner's* mistake triggered the exhaustion requirement." *Id.* at 811. (Emphasis in original, citations omitted). The Seventh Circuit concluded that "the misstep in Dole's case was entirely the fault of the prison system." *Id.* at 811.

Here, as in *Dole v. Chandler* and the cases cited therein, the misstep in dealing with seven of Roy's grievances was the fault of jail officials. The parties' submissions

7

establish that Roy was not able to exhaust his administrative remedies because jail officials ignored or overlooked these grievances and did not respond to them, so his failure to exhaust was "innocent" as that term is defined in *Pavey v. Conley*, 544 F.3d at 742 (failure to exhaust was "innocent" "where prison officials prevent a prisoner from exhausting his remedies.").

The court held in *Pavey* that in some circumstances where a prisoner has not been able to exhaust his administrative remedies the court should consider whether the prisoner "must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround)." *Pavey v. Conley*, 544 F.3d at 742. Because Roy is no longer at the jail, the grievance system is no longer available to him, and there is no remedy he could now obtain from the grievance system because it is too late for him to obtain a change in conditions for himself at the jail.

The defendants have not met their burden of establishing the defense of exhaustion of administrative remedies, and there are no disputed issues of fact which would require further inquiry. Accordingly, the court **DENIES** the defendants' motion for summary judgment (DE# 21), and **LIFTS** the stay on discovery. The court will soon issue another scheduling order in this case governing discovery cutoff and establishing a deadline for dispositive motions on the merits.

                                              **SO ORDERED.**

Date: April 16, 2010

                                          s/James T. Moody
                                          JUDGE JAMES T. MOODY
                                          UNITED STATES DISTRICT COURT