UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KEVIN D. ROY, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   No. 2:09 CV 239 |
| | ) |
| ROY DOMINGUEZ, *et al.*, | ) |
| | ) |
|     **Defendants.** | ) |

## OPINION AND ORDER

Plaintiff Kevin D. Roy ("Roy") filed a complaint pursuant to 42 U.S.C. § 1983 alleging that Lake County Jail officials violated his federally protected rights while he was a prisoner confined at the jail. The court screened Roy's amended complaint pursuant to 28 U.S.C. § 1915A, and allowed him to proceed against Sheriff Rogelio Dominguez and Jail Warden Benny Freeman on his First and Fourteenth Amendment claims and against them, in their official capacities only, on his Religious Land Use and Institutionalized Persons Act ("RLUIPA") claim. (Hereinafter, "defendants" will be used as a collective reference to both defendants in both of their capacities.)

Defendants have filed a motion for summary judgment pursuant to FED. R. CIV. P. 56, and Roy has responded. The standard for reviewing a summary judgment motion is the same regardless of whether a party is represented by counsel. *Outlaw v. Newkirk*, 259 F.3d 833, 836-837 (7th Cir. 2001).

> [T]he plain language of [FED. R. CIV. P.] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof

> concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986).

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations, quotation marks, ellipsis omitted).

The crux of the claim set out in Roy's amended complaint is that he is a Jehovah's Witness, and that defendants violated his federally protected rights when they did not allow Jehovah's Witnesses to conduct group worship in the jail chapel located on the jail's third floor even though other denominations were allowed to do so, and when they made it difficult for his minister to give him spiritual guidance. (DE # 4 at 3.)

In support of their summary judgment motion, defendants submit the affidavit of Lieutenant Craig Ponton, Lake County Corrections Policy #17-1707 (dealing with religious programming), and a list of visits by Jehovah's Witness ministers while Roy was at the jail in 2007 and 2008. In response, Roy submits a memorandum of law at the

end of which he "declare[s] under penalty of perjury that the actions and statements [in his memorandum of law] are true and correct to the best of my knowledge . . . " (DE # 79 at 21).

The events Roy complains of occurred in the almost year-long period running from April 20, 2007, to April 10, 2008. On April 10, 2008, Roy was transferred to the Indiana Department of Correction. He has been released from custody and now resides in Gary, Indiana. Although Roy's response to defendants' motion for summary judgment refers to events that occurred after April 10, 2008, the Court will consider only those events that occurred between April 20, 2007, and April 10, 2008. Roy also suggests that he seeks to vindicate the rights of his group and of other Jehovah's Witness inmates at the jail, but a § 1983 plaintiff cannot assert the rights of others. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996).

According to defendants, the policy of the Lake County Jail is to permit inmates, who wish to do so, to participate in the practices of their religion that are essential to their faith, subject to reasonable security constraints. (DE # 57-1 at 3 ¶5.) To the degree practical, all faith groups are granted equal access to the facilities of the Jail for their worship activities. (DE # 57-1 at 2.)

Lieutenant Ponton states in his affidavit that inmates are permitted to see ministers of their choice and conduct religious services within their housing units. (DE # 57-1 at 4 ¶6(c).) The jail provides larger rooms, including the chapel, for group religious services, which are scheduled "when the number of inmates located in a same

3

housing section seek religious services of the same faith or denomination and cannot be accommodated by the one-on-one religious services" in the small rooms in the housing sections (DE #57-1 ¶6(d)).

Defendants state that between April 20, 2007 and April 10, 2008, Roy was provided religious visitation and services by Jehovah's Witness ministers (DE #57-1 ¶8), and that the jail provided him with private visitation booths and holding cells in his housing unit for one-on-one clergy visits and religious services (DE #57-1 at 4 ¶6(d)). But, due to the small number of inmates requesting Jehovah's Witness religious services, jail officials did not schedule such services in the chapel (DE #57-1 ¶9). Because defendants met their initial obligation under Fed. R. Civ. P. 56, the burden shifts to Roy to come forth with evidence sufficient to allow a factfinder to decide in his favor the question of whether defendants unreasonably interfered with his exercise of his religion by not allowing Jehovah's Witnesses to conduct group worship in the jail chapel and by making it difficult for his minister to give him spiritual guidance. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## RLUIPA AND INJUNCTIVE RELIEF CLAIMS

Roy's amended complaint seeks injunctive relief and damages (DE 4 at 4). But his injunctive relief claims are moot because he is no longer housed at the Lake County Jail. If a prisoner is released or transferred to another prison, his request for injunctive relief is moot unless "he can demonstrate that he is likely" to return to his original facility. *Higgason v. Farley*, 83 F.3d at 811, quoting *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988). Roy's release from custody renders his requests for injunctive relief against Lake

4

County Jail officials moot.

> Maddox's prayers for injunctive relief are moot because he is no longer an inmate at Lawrence. *See Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir.2009). Maddox has not shown a realistic possibility that he will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains here. As such, "[a]ny relief that our judgment might permit would be purely speculative in nature." *See id.*

*Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011).

It is possible that Roy could at some point in the future return to the Lake County Jail, but the mere possibility that this might occur is insufficient. The standard to be applied is whether he is "likely" to return to the Lake County Jail, and on the record before the Court there is no reasonable basis to conclude that he is likely to be return to the jail.

Prisoners may not obtain either official or individual capacity damages on RLUIPA claims, they are limited to claims for injunctive relief. *Maddox v. Love*, 655 F.3d at 716-17, citing *Sossamon v. Texas*, — U.S. —. 131 S.Ct. 1651, 1658–59, 179 L.Ed.2d 700 (2011) and *Nelson v. Miller*, 570 F.3d 868, 884–86 and 889 (7th Cir.2009). Roy has no claim for injunctive relief because he is no longer at the jail, so he cannot obtain any relief under RLUIPA. *Maddox v. Love*, 655 F.3d at 717.

### CLAIM THAT JAIL OFFICIALS REFUSED TO ALLOW JEHOVAH'S WITNESSES TO HOLD GROUP SERVICES AT THE JAIL CHAPEL

Under the First Amendment, prisoners "retain the right to practice their religion to the extent that such practice is compatible with the legitimate penological demands of the state." *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). A prison or jail regulation or policy that might otherwise unconstitutionally impinge on an inmate's

First Amendment rights will survive a challenge if it is reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) and *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987). "[T]he prison is entitled to curtail these rights to the extent necessary to protect security." *Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (1988).

The Fourteenth Amendment's equal protection clause prohibits discrimination and requires the evenhanded treatment of all religions.

> In providing [inmates the] opportunity [to practice their religion], the efforts of prison administrators, when assessed in their totality, must be evenhanded. Prisons cannot discriminate against a particular religion. The rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more traditional denominations. Of course, economic and, at times, security constraints may require that the needs of inmates adhering to one faith be accommodated differently from those adhering to another. Nevertheless, the treatment of all inmates must be qualitatively comparable.

*Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991) (citations omitted).

Roy asserts that defendants violated his rights by not allowing Jehovah's Witnesses to conduct group worship in the jail chapel even though other denominations were allowed to do so. Defendants' submissions establish that the jail provides opportunities for small group religious services in the housing units (DE #57-1 at ¶6(d)), and that jail officials schedule services based on the number of inmates who express interest in attending services of a particular denomination (DE #57-1 at ¶6(d)-6(h)).

Lieutenant Ponton states in his affidavit that when Roy was at the jail, officials did not schedule group religious services for Jehovah's Witnesses at the chapel due to

the small number of inmates requesting a Jehovah's Witness religious service (DE # 57-1 at ¶9.) Roy submits his own statement that "'Jehovah's Witnesses' were denied use of the 3rd Floor Chapel even though there were just as many inmates in our group ('Jehovah's Witnesses') as there were in other religious groups who were allowed to use the 'Chapel.'" (DE # 79 at 2.) But Roy does not rebut Lt. Ponton's statement that the number of inmates actually requesting Jehovah's Witness services was too small to justify using the chapel. Roy states that he requested such services, but there is no evidence suggesting that any other prisoners requested Jehovah's Witness group services between April 20, 2007 and April 10, 2008.

The United States Constitution does not require prison and jail officials to provide a special chapel or place of worship"for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972). Where a facility has only one chapel, it does not violate the First Amendment or the Fourteenth Amendment's equal protection clause if jail officials give preference to larger groups. It is "not constitutionally impermissible for Defendants to consider the demand and need of the group requesting the chapel, along with space and staffing limitations, when deciding where religious groups will conduct their services." *Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007) (Policies on availability of religious services to the less than 1% of prison population practicing the Jewish faith, which resulted in an inmate's being denied weekly Sabbath and other holy day services did not violate his free exercise rights). Accordingly,

7

defendants are entitled to summary judgment on Roy's claim that they improperly denied him access to group religious services at the jail chapel.

## CLAIM THAT JAIL OFFICIALS INTERFERED WITH THE ROY'S ABILITY TO PRACTICE HIS RELIGION

Roy alleges that defendants made it difficult for his minister to give him spiritual guidance. He does not allege that he was deprived of religious visits or the right to practice his religion. Rather, he asserts that the location was inconvenient and that jail officials made it very difficult for his minister to give him spiritual guidance. (DE #4 at 3.)

Defendants assert that between April 20, 2007 and April 10, 2008, they provided Roy with religious visitation and services by Jehovah's Witness ministers, and provided him with private visitation booths and holding cells in his housing unit for one-on-one clergy visits and religious services. In his response, Roy states that "'Jehovah's Witnesses' were forced to hold religious services through the crack of a closed steel sliding door while our minister stood at the door from the hallway, and I stood at the opposite side of the door inside a loud dayroom . . . [and that] . . . it was extremely difficult to hear a muffled voice coming through a crack of a closed door while standing in a loud dayroom where the many different noises echo off the walls." (DE #79 at 2.) He further states under oath that "'Jehovah's Witnesses' were not allowed to use the smaller rooms or the one-on-one holding cells that defendants alleged in their statement of facts . . . of their 'joint memorandum of law,' were available to religious

8

groups who were smaller in size." (DE # 79 at 3.)

Summary judgment is not the procedure to determine which facts are true: the Court must accept the nonmoving party's version of events as true, and "extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When material facts are in dispute, then the case must go to a jury. *Bell v. Irwin,* 321 F.3d, 637, 640 (7th Cir. 2003). Defendants make certain factual claims which Roy has rebutted under oath, creating material issues of fact. If defendants' version of events is true, they provided Roy with an adequate opportunity to practice his religion and did not place substantial burden on his religious exercise. But if his version of events is true, a reasonable fact-finder could conclude that defendants violated his federally protected rights to practice his religion.

For the foregoing reasons, the court **GRANTS** defendants' motion for summary judgment (DE # 56) in part and **DENIES** it in part. The court **GRANTS** defendants' summary judgment on the claim that they violated Roy's rights by not scheduling Jehovah's Witness services in the jail chapel; **DISMISSES** Roy's Religious Land Use and Institutionalized Persons Act and other injunctive relief claims as moot; and **DENIES** defendants summary judgment on Roy's individual capacity damages claim that they made it unreasonably difficult for his minister to give him spiritual guidance.

**SO ORDERED.**

Date: January 31, 2012

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT